**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **DEBRA M. F.,[1]** Plaintiff, | ) | |
| v. | ) | **CIVIL ACTION** |
| | ) | **No. 25-1284-JWL** |
| **FRANK BISIGNANO, Commissioner of Social Security,** Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ's) assessment of Plaintiff's migraine symptoms, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I. Background

Plaintiff protectively filed an application for SSDI benefits on September 28, 2022. (R. 17, 197-99). After exhausting administrative remedies before the Social

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of disability claimants, it has determined to caption Social Security decisions using only the initial of the Plaintiff's last name.

Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ acknowledged Plaintiff's allegations of two to three debilitating medication-resistant migraines per month and found her symptoms had improved, but erred "because he never explained why he determined [Plaintiff's] migraines improved to such a degree that she would not require any allowances for breaks or absences secondary to her symptoms." (Pl. Brief 9) (citing Matthew S. v. Kijakazi, No. CV 20-1365-JWL, 2022 WL 1202399, at *4 (D. Kan. Apr. 22, 2022)).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999). The court addresses the error alleged in Plaintiff's Social Security Brief.

## II. Discussion

Plaintiff claims the ALJ acknowledged Plaintiff's allegations of two to three debilitating medication-resistant migraines per month but discounted her symptoms because he found they had improved. (Pl. Br. 8). She argues the ALJ erred "because he never explained why he determined [Plaintiff's] migraines improved to such a degree that she would not require any allowances for breaks or absences secondary to her symptoms." Id., 9 (citing Matthew S., 2022 WL 1202399, at *4.

Plaintiff argues, "the records cited by the ALJ failed to support his assessment that [Plaintiff] could perform a range of light work without any need for breaks or absences

during migraine episodes." (Pl. Br. 9). This is so, Plaintiff asserts, because her medical providers recorded her reports of continuing headaches and resulting symptoms and Plaintiff acknowledged improvement but alleged continuing debilitating symptoms. Id. 10 (citing Lindsay M. v. Kijakazi, No. 2:21-CV-02063-EFM, 2022 WL 612452 (D. Kan. Mar. 2, 2022)). Plaintiff argues Lindsay M. is similar to this case and the court there remanded for further consideration because the ALJ did not provide any analysis as to whether or why he found Plaintiff not credible in alleging acute symptoms of episodic pain and functional limitations. Id. 11. Plaintiff argues remand is also required here to adequately address her migraine symptoms because "the records the ALJ highlighted as evidence of [Plaintiff's] reported improvement continued to indicate considerable limitations, such as 15 migraines per month with associated symptoms such as vomiting [and] were consistent with [Plaintiff's] testimony that she benefitted from migraine treatment but suffered some treatment-resistant symptoms." Id. 12.

The Commissioner argues the ALJ properly considered Plaintiff's allegations of disabling migraine symptoms and discounted those allegations. He argues, "the ALJ's discussion was sufficient to discern his reasoning," and Plaintiff's argument merely seeks to shift the burden of proof to the Commissioner. (Comm'r Br. 5-6). He argues, "It is Plaintiff's burden to prove her workplace restrictions and here she has not established that further restrictions were warranted." Id. 6). He continues, "The question is not whether the Court [sic] or a different fact finder could have found Plaintiff disabled, but rather whether substantial evidence—again, simply 'more than a mere scintilla'—

supports the ALJ's factual findings." (Comm'r Br. 6) (quoting Biestek v. Berryhill, 587 U.S. 97, 103 (2019)).

He argues that the ALJ weighed all the evidence and supported his findings with citation to medical records and prior administrative medical findings. He asserts that Plaintiff's argument, although "couched in terms of how much discussion the ALJ provided, at its core … requires this Court [sic] to improperly reweigh the evidence." Id. 7. He argues that Plaintiff's appeal focuses on a single impairment, migraines, but the ALJ's consideration of Plaintiff's allegations of disabling symptoms necessarily focused on allegations regarding many mental and physical impairments. Id. 8. He argues an ALJ is not required to justify rejecting each allegation regarding the severity of any particular symptom so long as he provides his reasons for discounting Plaintiff's allegations of symptoms. Id. 9 (citing Keyes-Zachary v. Astrue, 695 F.3d 1156, 1169 (10th Cir. 2012) (the ALJ need not weigh each allegation, it is sufficient to present many of the allegations followed by a qualifying statement); Bales v. Colvin, 576 F. App'x 792 (10th Cir. 2014) ("an ALJ is not required to 'identif[y] any specific incredible statements,' so long as the ALJ 'indicat[es] to what extent [s]he credited what [the claimant] said when determining the limiting effect of [the claimant's] symptoms.'" (internal citation omitted); and April M. v. Kijakazi, Civ. A. No. 22-1218-JWL, 2023 WL 4545162, at *6 (D. Kan. July 14, 2023) ("What is required is for the ALJ to explain and clearly articulate his specific reasons for discounting Plaintiff's allegations of symptoms and those reasons must be supported by the record evidence. That does not require an

ALJ to address each individual symptom, but to address the individual's symptoms generally.")). The Commissioner asserts:

> Plaintiff argues that the ALJ should provide enough discussion and evidence to prove that her statements are not entirely accurate. Not only are such elevated discussion and evidentiary standards not required by the governing regulations, but Plaintiff's argument effectively constitutes improper burden shifting.

(Comm'r Br. 10).

In her Reply Brief, Plaintiff argus the Commissioner mischaracterized, and apparently misunderstood, her argument on appeal. She clarifies her argument:

> [Plaintiff] merely seeks to hold the Commissioner accountable to the standard he set forth in his own [Social Security R]uling, SSR 16-3p, 2016 WL 1119029, at *2 (Soc. Sec. Admin. Mar. 16, 2016). SSR 16-3p explains that the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated." Id. at *9. [Plaintiff] does not request that this Court [sic] reweigh the evidence or apply a different standard than explicitly articulated by the Commissioner. Id.

(Reply 2).

**A. Standard for Evaluating a Claimant's Allegations of Symptoms**

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms is deferential. Such determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations[2] are peculiarly the province of the finder of

---

[2] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from her impairments was "credibility determination." Although that term is no longer used by the Social Security Administration, the applicable regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed. Revisions

fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

The framework for a proper analysis of a claimant's allegation of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling. See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework). The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures Plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R.

---

to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529). Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in SSR 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017). Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on October 29, 2024, when this case was decided. Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p and is no longer a valid factor to be considered.

§ 404.1529(c)(3)(i-vii). The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner. Luna, 834 F.2d at 165-66. These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

### B. The ALJ's Relevant Findings

The ALJ found Plaintiff has a combination of multiple physical and mental medically determinable impairments including migraines. (R. 19). The ALJ considered whether Plaintiff's migraines met or equaled the severity of a listed impairment:

> The claimant's headaches are not directly addressed by a listing. As indicated in SSR 19-4p covering headache disorders, the most comparable listing is listing 11.02 on epilepsy. The documented frequency and severity of the claimant's headaches does [sic] not rise to the level described in this listing.

Id., 22. The ALJ included RFC limitations tending to reduce or eliminate the triggers or incidence or dangers of migraines;

> The claimant should avoid concentrated exposure to extreme cold temperatures and weather, to vibration, to hazards (e.g. dangerous machinery, unprotected heights), and to pulmonary irritants (e.g. fumes, odors, dusts, gases, poor ventilation). The individual can tolerate light no brighter than that found in a typical office environment and can tolerate moderate noise.

Id., 24 (Finding no. 5, bold omitted).

The ALJ summarized Plaintiff's allegations of disabling symptoms:

> Through hearing testimony and disability reports, the claimant is alleging the inability to work fulltime due to a combination of physical and psychological impairments. She testified that her back issues made it hard for her to drive more than 30 to 60 minutes. She had some pain in the neck area where it connected to the shoulders, and this also caused issues with her hands. She could stand about 10 minutes without moving or sitting; and she could sit 30 minutes before she needed to adjust positions. She could lift and/or carry about a gallon of milk. If using a walker or cart, she could go about 30 minutes; she started using the walker a little over a year ago. The claimant explained that she has 15 to 20 migraines a month, and that some of these are aborted with rescue meds. Of these 15 to 20, about two or three are unresponsive to medication. She has good and bad pain days. On good days she tries to get stuff done like laundry or cleaning. She does less on bad days and spends the day in bed. These bad days are becoming more frequent and are almost every day.
>
> The claimant also testified to mental health symptoms that prevent her from working. She described symptoms of anxiety. When her pain or anxiety is big, she cannot concentrate. Her memory is especially poor on migraine days.

(R. 25). The ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id.

The ALJ summarized Plaintiff's treatment records over time and noted inconsistencies with Plaintiff's allegations of disabling symptoms. Id., 26-32. The ALJ noted Plaintiff saw her primary care physician on November 24, 2021stating she could not work due to diabetes and fatigue. Id., 26. The ALJ noted the physician made numerous benign findings and found, "Despite these benign findings, the claimant was diagnosed with migraines, chronic fatigue syndrome, fibromyalgia, and uncontrolled type II diabetes mellitus. Id. (citing Ex. 12F/2-3).

Plaintiff established care with NMRMC[3] Family Medicine on February 1, 2022, reporting chronic back pain and was referred for physical therapy. (R. 26) (citing Ex. 15F/8, 9). On follow-up Plaintiff reported she was feeling better and had attended physical therapy for several weeks but had not been there for the last two weeks. Id., 27 (citing Ex. 15/2, 3). The ALJ specifically noted a significant inconsistency presented by a medical record dated April 26, 2022:

> The claimant returned to primary care on April 26, 2022 with complaint of right knee pain that started five days earlier. She stated that it got worse at a concert that lasted a few days. She reported that she had to take frequent breaks and that bending and kneeling make her pain worse (Exhibit 19F/8). The claimant also reported that she was tired all of the time, but admitted that she started a new business with her husband. She was taking care of her baby, as well as the new business and her home (Exhibit 19F/9).

Id.

Plaintiff followed up on her chronic migraines via telehealth on August 11, 2022. The ALJ noted that

> she reported that she had completed three rounds of Botox, with significant reduction in frequency and severity of her migraines. She was getting more sleep than before, and she was currently taking care of her baby. She only needed to use two Eletriptan tabs per month, and Tylenol twice monthly (was previously using this weekly) (Exhibit 30F/15-18).

Id. The ALJ noted that on August 29, 2022, Plaintiff

> stated that she had not been taking the steroid or muscle relaxer as prescribed: she had only been taking half the dose of prednisone. Her pain was improving, but she was still struggling with bending and kneeling, as

[3] NMRMC is not further identified in the exhibits. However, the record also contains hospital records from Neosho Memorial Regional Medical Center and it seems likely NMRMC Family Medicine is a clinic associated with the hospital.

> well as carrying her son. She had not started physical therapy or tried any exercises or stretches (Exhibit 27F/9).

(R. 27). The ALJ noted that on October 6, 2022, Plaintiff received Botox injections for her migraines and continued to report improvement with headaches reduced from 30 days to 15 days per month. Id., 28. On July 18, 2023, Plaintiff reported intractable migraines and the plan for treatment "was to proceed with a Vyepti infusion for her migraines and continue Relpax as a relief mediations [sic]." Id. On September 6, 2023, Plaintiff followed up on her migraines. Id., 29.

> [S]he reported that she still had daily symptoms, but that the Botox significantly reduced the intensity and that she was able to function. The Eletriptan (Relpax) reduced the intensity to where she could manage the rest of the day, and she reported that she was currently taking care of her baby (Exhibit 51F/26).

Id. The ALJ noted Plaintiff was referred for a consultative examination on January 6, 2024, the results of which the ALJ found "do not support the claimant's allegations of disabling symptoms." Id. Plaintiff reported numerous disabling limitations but the examination was largely normal. Id. The ALJ reported that the examiner noted Plaintiff used a walker she reported as prescribed but which did not appear medically necessary. Id. (citing Ex. 62F/5) ("The claimant presents with a walker that was prescribed by a physician but did not appear to be medically necessary. She was able to walk without the walker and it did not improve her gait."). Plaintiff reported to her primary care physician on March 12, 2024, "that her husband recently got a job so she 'has to take care of her son in the busiest times.'" Id. 30. The AL noted Plaintiff underwent medial branch blocks of nerve's using radiofrequency ablation on June 19, 2024, and reported greater than 80% reduction in pain. Id.

The ALJ also considered and discussed the records respecting Plaintiff's mental impairments. (R. 30-32). He noted that on February 7, 2023, Plaintiff reported financial and situational stress, but her anxiety and depression remained stable on medication. Id., 31. At a follow-up visit on February 21, 2024, her mental status examination was normal and she "reported that she was doing well and doing activities that she enjoyed." Id.

The ALJ summarized the bases for his RFC assessment; id., 31-32; and specifically explained his consideration of Plaintiff's migraines and anxiety disorder:

> Additionally, the claimant's migraines and anxiety disorder further support the limitations on work environment and social interaction. Her migraine frequency decreased with Botox treatment, with additional management through Eletriptan and Quilipta (Exhibit 30F/8, 51F/26). She also reports improved stability of anxiety and depression with medication, with mental status exams showing consistent concentration, adequate attention, and cooperative behavior (Exhibits 38F/23, 50F/10). Given this, the residual functional capacity limits her to semiskilled tasks with occasional interaction with colleagues, supervisors, and the public in non-transactional roles. These restrictions address the functional impact of her mental health conditions while acknowledging the record's overall indication of symptom stability under continued treatment.

(R. 32).

The ALJ found the prior administrative medical findings of the state agency medical consultants, Dr. Lee and Dr. Hegde, "generally persuasive" because their "opinions are both well-supported and consistent with the objective findings." Id. Both physicians discussed Plaintiff's migraines—"she is not being tx [treated] for these routinely and is not requiring physician intervention. They do not = severity or intent of [Listing] 11.02." (R. 89, 109). However, the ALJ noted he incorporated additional limitations due to Plaintiff's migraines, noting, "Given the claimant's consistent reports

of migraines, which improved but remained partially limiting despite Botox treatments, additional restrictions to occasional overhead reaching and environmental adjustments to lighting and noise were also added to further align with her needs." (R. 32-33).

The RFC assessed by the ALJ included the following limitations at least partially based upon Plaintiff's migraines: to "occasionally reach overhead bilaterally. … The claimant should avoid concentrated exposure to extreme cold temperatures and weather, to vibration, to hazards (e.g. dangerous machinery, unprotected heights), and to pulmonary irritants (e.g. fumes, odors, dusts, gases, poor ventilation). The individual can tolerate light no brighter than that found in a typical office environment and can tolerate moderate noise." Id., at 24 (finding no. 5, bold omitted).

**C. Analysis**

Contrary to Plaintiff's arguments, the discussion above reveals the ALJ provided an extensive discussion of the inconsistencies between Plaintiff's allegations of disabling symptoms and the record evidence. Moreover, those inconsistencies are documented by extensive citation to record evidence. This is not a case of the ALJ providing conclusory statements and merely reciting factors to be considered, but in accordance with SSR 16-3p the decision contains "specific reasons for the weight given to the individual's symptoms, [is] consistent with and supported by the evidence, and [is] clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3P, 2016 WL 1119029, at *9.

Plaintiff argues that despite improvement she testified to continued debilitating symptoms and despite acknowledging benefit from treatment, she continued to suffer

breakthrough symptoms and "[t]he ALJ's observation that [Plaintiff's] migraine symptoms improved with treatment failed to identify any inconsistency between [Plaintiff's] reports [of continued debilitating symptoms] and the evidence within the record." (Pl. Br. 10). The problem with this argument is that it turns the burden of proof in a Social Security case on its head. It is the Commissioner's responsibility in evaluating Plaintiff's allegations of disabling symptoms to point to inconsistencies between Plaintiff's allegations and the record evidence which justify discounting those allegations. It is not his responsibility to prove Plaintiff's allegations are erroneous.

What is required is for the ALJ to explain and clearly articulate his specific reasons for discounting Plaintiff's allegations of symptoms and those reasons must be supported by the record evidence. That does not require an ALJ to address each individual symptom, but to address the individual's symptoms generally. This is consistent with the fact that many symptoms cannot be sensed externally and it is impossible for a fact-finder—the adjudicator in a Social Security disability case—personally to determine the presence, severity, and persistence of each symptom. But in evaluating the entire record evidence he will see consistencies and inconsistencies upon which he may reach a determination. Hence, the necessity that the ALJ's rationale be supported by the record evidence. This is consistent with the three-step evaluation from Luna as presented above. If Plaintiff has presented a symptom-producing impairment by objective medical evidence (migraines); and there is a "loose nexus" between the proven impairment and the claimant's subjective allegations (which there is); then, the ALJ must consider all the evidence, both objective and subjective, to decide whether Plaintiff's

symptoms are in fact disabling. In such a case it is impossible to know with certainty whether Plaintiff's allegations should be accepted, but the assessment of consistency with the overall record evidence has been adopted as the appropriate determining factor.

Plaintiff's appeal to this court's decision in Matthew S. does not require a different result. In that case, the ALJ "did not identify any inconsistencies she relied upon as a basis to discount Plaintiff's allegations of symptoms. Although the ALJ stated she found the allegations "not entirely consistent ... for the reasons explained in this decision" (R. 17), she did not explain any specific reasons in her decision." Matthew S., 2022 WL 1202399, at *4. Here, as explained above, the ALJ noted the inconsistencies he relied upon and stated his rationale for discounting Plaintiff's allegations of symptoms.

Plaintiff's appeal to Lindsay M. is to no greater effect. The Commissioner argues Lindsay M. should be distinguished because it's holding deals with the ALJ's findings at step three whereas the issue here is the ALJ's findings respecting Plaintiff's allegations of disabling symptoms. (Comm'r Br. 13-15). In her Reply Brief, Plaintiff argues the Lindsay M. "court explained the ALJ's assessment of the claimant's migraine symptoms was inadequate, because: 'he has failed to discuss the evidence he rejected or chose not to rely upon and whether or why he found Plaintiff lacked credibility as to these reports of *not constant*, but episodic pain and functional limitations.'" (Pl. Reply 6) (quoting Lindsay M., 2022 WL 612452, at *9) (italics in original, underline added by this court for emphasis).

Both the Commissioner's and Plaintiff's characterization of the Lindsay M. decision are correct. As the Commissioner suggests, the determinative issue before that

court was "The ALJ's Finding that Plaintiff's Headaches Do Not Meet or Equal a Listing[--the step three determination—]Is Not Supported by Substantial Evidence;" 2022 WL 612452, *5; and, as Plaintiff suggests, the court found error because the ALJ did not discount certain of Plaintiff's specific reports of symptoms. However, the Lindsay M. court did not address whether ALJ had properly addressed the consistency of the plaintiff's allegations of disabling symptoms with the record evidence (the credibility determination) and it did not explain why it found the ALJ must address the credibility of particular allegations at step three when it is not required in an evaluation of a plaintiff's alleged symptoms.

Lacking such discussion in the case of Lindsay M., this court cannot evaluate the applicability of that case here. Nevertheless, to the extent Lindsay M. may stand for the proposition that in evaluating a plaintiff's allegation of disabling symptoms the Commissioner must demonstrate inconsistencies with each allegation of a symptom or must demonstrate inconsistencies with particular allegations of symptoms, the court finds it unpersuasive because that is not the law for the reasons discussed above. In evaluating the consistency (credibility) of a claimant's allegations of disabling symptoms and to discount those allegations the Commissioner must identify the inconsistencies upon which he relied, and those inconsistencies must be supported by the record evidence. This is so because many alleged symptoms cannot be conclusively demonstrated or disproven by reference to record evidence and consideration of all the record evidence and of its consistency with the claimant's allegations is necessary to justify accepting or discounting the alleged disabling symptoms. Such "determinations are peculiarly the

province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. The court may not "substitute [its] judgment for that of the agency." Bowman, 511 F.3d at 1272; accord, Hackett, 395 F.3d at 1172; see also, Bowling, 36 F.3d at 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell, 862 F.2d at 475 (brackets in Bowling)).

Plaintiff has shown no error in the ALJ's evaluation of her allegations of disabling symptoms.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated November 16, 2026, at Kansas City, Kansas.

S/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**